UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ERIC DEWAYNE SPENCER,

     Movant,

v.                                    Civil Action No. 2:08-01390

                                      Criminal No. 2:99-00012-03

UNITED STATES OF AMERICA,

     Respondent.

<u>MEMORANDUM OPINION AND ORDER</u>

     Pending before the court is Movant Eric Spencer's Motion to Vacate, Set Aside and Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 1124).  By Standing Order, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of findings and recommendations regarding disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Stanley submitted to the court her Proposed Findings and Recommendation ("PF&R") on November 14, 2011, in which she recommended that the § 2255 Motion be denied, and that the civil action be dismissed from the court's docket.  (Doc. No. 1207).

     In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Stanley's Findings and Recommendation.  The failure of any party to file timely objections constitutes a waiver of such party's right to a <u>de novo</u> review by this court.  <u>Snyder v. Ridenour</u>,

1

889 F.2d 1363 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  On December 8, 2011, the Movant filed a motion to extend time to file objections to the PF&R, which the court granted.  (Docs. No. 1210, 1214).  On February 9, 2012, the Movant filed a second motion to extend time to file objections, which the court granted, giving the Movant until February 20, 2012, to file his objections.  (Docs. No. 1219, 1220).  The Movant filed his objections on February 24, 2012.  (Doc. No. 1222).[1] The court has reviewed de novo those portions of the PF&R to which the Movant objects and **FINDS** that the objections lack merit.  Accordingly, the court **ADOPTS** and incorporates herein the Magistrate Judge's Proposed Findings and Recommendation.

I.   Factual and Procedural Background

On or about February 17, 1999, a federal grand jury returned a thirteen count superseding indictment charging Eric Spencer and a number of others with various drug-related

---

[1] The court notes that the objections were not timely filed. However, on November 10, 2011, the Movant was granted a sentence reduction under 18 U.S.C. § 3582, pursuant to the Fair Sentencing Act of 2010, which retroactively amended the United States Sentencing Guidelines for offense involving cocaine base. The Movant's sentence was reduced from 262 months to 168 months. Spencer was released from incarceration on November 16, 2011. (Doc. No. 1207).  Because of this, he did not immediately receive the PF&R entered November 14, 2011.  There is ample evidence that the Movant was diligently pursuing his rights, and he filed his pro se objections four days after the extended deadline.  For these reasons, the court will treat his objections as timely filed.

offenses.  Defendant was charged with conspiracy to distribute
and possess with intent to distribute cocaine powder, cocaine
base ("crack"), and marijuana, in violation of 21 U.S.C. §§
841(a)(1) and 846: travel in interstate commerce to facilitate
the conspiracy in violation of 21 U.S.C. § 846, and possession
with intent to distribute crack, cocaine powder, and marijuana
in violation of 21 U.S.C. § 841(a)(1).  (Doc. No. 57).

<u>Guilty Plea</u>

     On or about April 21, 1999, Defendant pled guilty, pursuant
to a written plea agreement, to the conspiracy charge.  During
the plea hearing, and in accordance with the requirements of
Federal Rule of Criminal Procedure 11(b)(1), Mr. Spencer
appeared with his counsel, Herbert Henderson, to review the
penalties to which Spencer was exposed based upon his guilty
plea, and to review the rights he was giving up as a result of
the plea.  At the plea hearing, before and after pleading
guilty, Mr. Spencer was informed that, at sentencing, the United
States intended to prove a sufficient drug quantity for the
statutory ten-year mandatory minimum and that the maximum
sentence could be life in prison.  (Doc. No. 539 at 8-9, 15-16,
20).  Additionally, at the plea hearing, Mr. Henderson, in the
presence of Spencer, proffered that the Defendant admitted that
from 1995 to 1998, he conspired with Calvin Dyess, Benjamin
Green, and Leon Mitchell to purchase cocaine and marijuana and

3

sell it to others.  Mr. Henderson further specified that these individuals agreed to pool their money, purchase drugs and divide the drugs for re-sale.  Mr. Henderson proffered that Spencer was involved in the sale of cocaine, crack, and marijuana.  (Id. at 14-15). Mr. Spencer also acknowledged in his own words that he knew he was dealing with these controlled substances, that he knew what others were doing, and that they knew what he was doing.  Spencer admitted that his conduct was unlawful, and specifically admitted that the conspiracy involved 50 or more grams of cocaine base or five or more kilograms of cocaine powder.  (Id. at 16-17).

Sentencing

A three-day sentencing hearing was held for Eric Spencer and his co-defendants, Calvin Dyess and Orange Dyess on August 25 and 26, 1999.  As noted by the Court of Appeals, "[t]he district court's factual findings that served as bases for [Defendant's] sentence were not admitted by [Defendant]." United States v. Dyess, 478 F.3d 224, 241 (4th Cir. 2007).  The sentencing court found that the testimony presented at the sentencing hearing established that the total amount of drugs involved in the conspiracy was at least 1.5 kilograms of cocaine base, as calculated in the PSR, and that Spencer had a supervisory role in the distribution scheme.  Mr. Spencer did not contest the amount of drugs involved during the sentencing

4

hearing and, in fact, admitted that the conspiracy involved 12
to 17 kilograms of cocaine during his debriefing and through Mr.
Henderson at sentencing.  During his allocution, Mr. Spencer
stated: "I haven't denied selling drugs, and I fully accept
responsibility for the offenses I committed."  (Doc. No. 488 at
415).

<u>Mr. Spencer's First Appeal</u>

On September 1, 1999, Mr. Spencer timely filed a <u>pro se</u>
notice of appeal to the United States Court of Appeals for the
Fourth Circuit.  (Doc. No. 386).  His appeal was consolidated
with his co-defendants, Calvin Dyess and Orange Dyess.  (Doc.
No. 498, 99-4566(L)).  Attorney Thomas Gillooly was appointed to
represent Spencer during his appeal.

The defendants moved to disqualify the United States
Attorney's Office for the Southern District of West Virginia and
that motion was granted.  The United States Attorney's Office
for the Eastern District of Virginia was appointed by the
Attorney General to serve as Special Assistants to the Attorney
General to represent the United States.  (Doc. No. 761).  On
July 9, 2003, the defendants jointly moved to dismiss the
indictment, to withdraw their guilty pleas, and for a new
sentencing hearing based on the government misconduct. (Doc. No.
826.) Spencer and Calvin Dyess also filed a joint motion to
vacate their sentences, and to conduct a new sentencing hearing

based upon the Supreme Court's decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). (Doc. No. 824).

In support of their motions for relief, Mr. Spencer and his two co-defendants argued that the factual basis for the sentencing guidelines calculations used at their original sentencing hearing was undermined by the misconduct of Officers Hart and Henderson and co-defendant, Ms. Rader, as well as by the purported recantations by co-defendants Benjamin E. Green, Jr. and Lori Nicole Cummings. (Doc. No. 827).

On August 26, 2003, this court empaneled a special grand jury in Charleston, West Virginia, to investigate and review the conduct surrounding the investigation of the drug trafficking activities of Calvin Dyess, Spencer and others. <u>Dyess</u>, 478 F.3d at 234. The grand jury ultimately issued a presentment and report.

According to the Presentment and Report of the Grand Jury, during the grand jury proceedings, Officer Hart testified that he denied suggesting that Ms. Rader lie about Calvin's drug dealing, and further denied threatening Ms. Rader during the course of her criminal case. Hart also denied ever attempting to coerce other witnesses to exaggerate the weight of the drugs involved in the conspiracy, as alleged in the affidavits of Green and Cummings. (Doc. No. 1027 at 12).

In his December 17, 2003 Order addressing the various
motions, Judge Haden stated that "an evidentiary hearing on the
alleged perjured testimony offered at sentencing and
resentencing, if necessary, cleansed of the tainted evidence,
should cure any prejudice engendered by Hart's malfeasance."
United States v. Dyess, 293 F. Supp. 2d 675, 686 (S.D. W. Va.
Dec. 17, 2003).   Judge Haden also denied the defendants' motion
to withdraw their guilty plea, correctly noting that the
information was not exculpatory evidence; rather it was
impeachment evidence. Judge Haden also noted that no Defendant
made a claim of actual innocence.  (Doc. No. 1207 at p. 18).  As
to the defendants' motion to be resentenced, Judge Haden ordered
an evidentiary hearing to determine the weight of the credible
evidence on the issue of Spencer's three-point enhancement for
his role in the offense.  Id.  The evidentiary hearing was held
on July 9, 2004, in front of this court.[2]

On June 24, 2004, the Supreme Court decided the case of
Blakely v. Washington, 542 U.S. 296 (2004), which extended the
holding in Apprendi to other mandatory state sentencing schemes.
The Court held that, in the context of mandatory sentencing
guidelines under state law, the Sixth Amendment right to a jury

---

[2] Judge Haden passed away prior to the evidentiary hearing, and
the undersigned was appointed to the case post-appeal.

trial prohibited enhancing criminal sentences based on facts other than those decided by the jury or admitted by the defendant. Still outstanding was the issue of whether these holdings would be extended by the Court to the United States Sentencing Guidelines.

The defendants, who had the burden of proof, called the following witnesses to testify at the July 9, 2004 evidentiary hearing: Rachel Ursala Rader (Ms. Rader), Officer William Hart, Officer George Henderson, Lori Nicole Cummings, United States Probation Officer John B. Edgar and Assistant United States Attorney Monica Schwartz. Both the defense and the government examined and cross-examined the witnesses under oath. None of the testimony at the evidentiary hearing concerned any specific amounts of drugs. In fact, Ms. Rader and Lori Cummings both testified that they had no specific knowledge of the amount of drugs involved in the conspiracy.

On February 11, 2005, the undersigned issued an Order denying the defendants' motions to vacate their sentences and their motion for re-sentencing. (Doc. No. 1001). After having the opportunity to observe each witness testify at the hearing, the court noted that "the defense offered proof that part of [Ms. Rader's] testimony during defendants' consolidated sentencing hearing is not reliable." (Id. at 3). The government did not dispute this finding. Instead, the government argued

8

that, notwithstanding Ms. Rader's testimony and the alleged misconduct by Officers Hart and Henderson, there was sufficient untainted evidence to support the original sentences imposed. (Id. at 3-4).

The court further found that the drug quantities established by the government witnesses (other than Ms. Rader, Hart, Henderson, Green and Cummings, whose testimony was deemed unreliable) at the original sentencing hearing "significantly exceeded the 1.5 kilograms of crack cocaine Judge Haden used to sentence the defendants." (Id. at 5). There was no evidence presented that the conduct of Officers Hart and Henderson had affected the original testimony of the remaining witnesses. (Id. at 6).

The Order further stated that the court "reconsidered Judge Haden's original sentences in these cases in light of Booker and finds them to be reasonable and fully supported by credible evidence. In light of this evidence, if called upon to resentence these defendants, the court would give them the same sentences Judge Haden imposed." (Id. at 11-12). The defendants filed a motion to reconsider, which was summarily denied by this court. (Doc. No. 1025). On February 28, 2005, Mr. Spencer filed a Notice of Appeal, and Joan Mooney was appointed as new counsel for Defendant on this appeal. (Doc. No. 1020).

9

<u>Mr. Spencer's Second Appeal</u>

On his second appeal, Spencer argued that his <u>Booker</u> claim was properly preserved on remand.  He further asserted that he neither admitted, nor could the government prove beyond a reasonable doubt, that 1.5 kg of cocaine base was attributable to him.

The Fourth Circuit made the following findings concerning his claims:

> Sixth Amendment sentencing error occurs when a sentencing court under a mandatory sentencing guideline regime bases its decision on facts (other than a prior conviction) not found by a jury beyond a reasonable doubt or admitted by the defendant, to enhance a defendant's sentence above the minimum required by a finding of guilty for a given offense. <u>Booker</u>, 543 U.S. at 244, 125 S. Ct. 738. Such error occurred when these defendants were initially sentenced in 1999, but we are of the opinion it was cured on remand in 2005. In its order denying the defendants' motions to vacate the sentences and for resentencing, the district court (Judge Faber) announced that it had "reconsidered . . . [the] original sentences in these cases in light of Booker" and found the terms "to be reasonable and fully supported by credible evidence." (SJA 390-91). We find that this language is, for all practical purposes, an "alternative identical sentence treating the Guidelines as advisory only." <u>See</u> <u>United States v. Revels</u>, 455 F.3d 448, 451 (4th Cir. 2006; see <u>United States v. Hammoud</u>, 381 F.3d 316, 353-54 (4th Cir. 2004). We therefore conclude that any Booker error in the defendants' sentencing is harmless, as it has not "actually affected the outcome of the proceedings." <u>United States v. Hughes</u>, 401 F.3d 540, 548 (4th Cir. 2005).

United States v. Dyess, 478 F.3d 224, 240-241 (4th Cir. 2007).
The Fourth Circuit upheld the decision of the lower court and
ultimately regarded any Sixth Amendment errors as harmless.

Finally, to the extent that the defendants argued that
their original sentences were not supported by credible evidence
because the sentences were tainted by the misconduct of Hart and
Ms. Rader, which culminated in Hart's subornation of perjury by
Ms. Rader at the sentencing hearing, the Fourth Circuit stated:

> We have already addressed the substance of this
> question in our discussion of Booker and the impact on
> the defendants' sentences of the [Rader]-Hart affair.
> On remand, Judge Faber considered anew all of the
> evidence justifying the defendants' sentences and
> found that "in spite of the credibility problems of
> [Rader], Hart, Henderson and Green, the original
> sentences are supported by abundant credible
> evidence." (SJA 390). We agree with the district court
> and find the defendants' contentions on this point to
> be without merit.

Id. at 242-43.

Spencer then filed a Petition for Writ of Ceriorari,
Spencer v. United States, 552 U.S. 1063 (No. 07-5582).  The
Petition for a writ of certiorari was denied on December 3,
2007.  552 U.S. 1063 (2007).  A Petition for Rehearing was also
denied by the Supreme Court on March 3, 2008.  Spencer v. United
States, 552 U.S. 1251 (2008).  Defendant filed the instant
motion under 28 U.S.C. § 2255 on December 5, 2008.  (Doc. No.
1124).

On November 10, 2011, Eric Spencer was granted a reduction in sentence in light of Amendment 750 to the United States Sentencing Guidelines and under 18 U.S.C. § 3582(c)(2).  (Docs. No. 1204-1206).  Defendant's sentence was reduced to 168 months. (Doc. No. 1204 at 2).  In addition to the conditions of supervised released previously imposed, the court imposed a special condition of supervised release requiring Defendant to serve 90 days in a community confinement center. (Doc. No. 1204 at 2). The District Court's Memorandum Opinion and Judgment Order states that, in granting the reduction, the District Court considered an addendum to the PSR and the applicable factors under 18 U.S.C. § 3553(a).

## II.  Discussion

### Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 688 (1984), the United States Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel.  The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness.  Id. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  Id. at 688-89.

In order to meet the first prong, Defendant:

Must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id. at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  Id. at 697. Using this standard and based upon all of the evidence of record, the court will address the merit of each of Movant's allegations concerning ineffective assistance of counsel.

The standard for ineffective assistance of counsel following a guilty plea is that the defendant must demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial." <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988).

III. <u>The Movant's Objections</u>

> **Objection I. "Counsel Henderson was ineffective for failing to investigate the law regarding Movant Spencer's aggravating rule [*sic*, role] enhancement under U.S.S.G. § 3B1.1."**

The Movant asserts that he received ineffective assistance of counsel at the sentencing stage of his trial, when his counsel failed to present <u>United States v. Capers</u>, 61 F.3d 1100 (4th Cir. 1995).  In <u>Capers</u>, the Fourth Circuit explained the 1993 Amendment to the commentary of U.S.S.G. 3B1.1.[3]

According to U.S.S.G. § 3B1.1(b), "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase [base offense level] by 3 levels." <u>Capers</u>, 61 F.3d 1100, 1109 (4th Cir. 1995).  "Before the amendment, a defendant in the circuit could receive the enhancement without having exercised control over other persons; after the amendment, the defendant must have exercised control over other persons to warrant the enhancement."  <u>Id.</u> at 1110. <u>Capers</u> further explained:

---

[3] This objection is essentially the same ground raised in his Section 2255 motion, where the Defendant asserts that Mr. Henderson did not have an appropriate understanding of the guideline permitting a sentence enhancement for someone who had an aggravating role in the offense.  (Doc. No. 1125 at 45).

14

The 1993 amendment did not alter the text of the
guideline itself but rather amended the commentary by
adding a new application note to explain what it means
to be an organizer, leader, manager or supervisor.
Prior to the amendment some circuits (including ours)
had concluded that a defendant's control over
property, assets, or criminal activities could trigger
U.S.S.G. 3B1.1(b)'s enhancement.  Other circuits,
however, had concluded that the enhancement was
warranted only when the defendant controlled one or
more participants in the criminal endeavor.  The 1993
amendment explains that an increased sentence may be
warranted in either case, though an enhancement (as
opposed to an upward departure) is the appropriate
vehicle only for those defendants who controlled
people.

Id. at 1110.

In further support of his objection, Movant cites to two

cases originating in the Southern District of West Virginia,

United States v. Cameron, 573 F.3d 179 (4th Cir. 2009), and

United States v. Sayles, 296 F.3d 219 (4th Cir. 2002).  In

Cameron, the Fourth Circuit found error in a sentence where the

district court applied a 3B1.1 enhancement, finding that there

was no evidence that the defendant planned or organized the

operation, exercised any control or authority over other

participants, recruited accomplices into the operation, or

claimed any share of the fruits of the criminal activity.  573

F.3d at 186.  In Sayles, the Fourth Circuit reversed the

district court's application of 3B1.1 enhancements, holding that

"being a buyer and seller of Illegal drugs, even in league with

more than five or more other persons, does not establish that a

defendant has functioned as an 'organizer, leader, manager, or supervisor' of criminal activity." Id. at 185.

The Movant's argument under this objection is that it is "arbitrary and capricious that the [PF&R] would insinuate an upward departure when the judge did not depart upwardly at the original sentencing." In fact, the Defendant's Pre-Sentencing Report recommended an upward adjustment under § 3B1.1(b) based on the probation officer's belief that Spencer "was a manager/supervisor of criminal activity" and that the application of U.S.S.G. 3B1.1(b) is appropriate. (Doc. No. 1166 at p. 9). Judge Haden did impose a three-level enhancement for an aggravated role in the offense; the court also granted a three-level reduction for acceptance of responsibility. (Doc. No. 488 at 409-12).

Additionally, it was established by a preponderance of the evidence at the sentencing hearing that the Movant had exercised managerial responsibility during the conspiracy. Counsel Henderson cross-examined each of the government's witnesses concerning Defendant's alleged activities in the course of the conspiracy. (See Doc. No. 488 at 402-405). Mr. Henderson's objection and argument was consistent with the amendment to § 3B1.1 and the holding in Capers. The Movant has not demonstrated that Henderson's representation fell below an objective standard of reasonableness; nor is there evidence that

16

"but for" Henderson's conduct, he would not have pled guilty and would have insisted on going to trial. For these reasons, the court FINDS that Movant has not shown that Mr. Henderson provided ineffective assistance of counsel in violation of his Sixth Amendment rights, and no relief is warranted on this ground.

> **Objection II. "Counsels were ineffective for not objecting to the district court's misrepresentation of the statutory mandatory minimum and maximum penalties alleged in the indictment."**

The Movant claims that his lawyers provided ineffective assistance of counsel by failing to inform him of the minimum and maximum punishments when no drugs were charged in the indictment. (Doc. No. 1222 at pg. 6). The Movant asserts that the statutory minimum and maximum punishment to which he was exposed was misrepresented at the plea hearing, and that his lawyers should have objected to and challenged this misrepresentation. Mr. Spencer's objection is limited to Mr. Gillooly and Mr. Mooney.[4]  Id.

To address this claim, the first issue is whether there was a misrepresentation of the statutory maximums and minimums. To be certain, the law in the Fourth Circuit was changing during

---

[4] The Movant concedes that this argument is frivolous with respect to Mr. Henderson: "[The argument might be frivolous] in light of [sic; in regards to] Mr. Henderson and the timeline of Jones." Doc. No. 1222 at pg. 6. The Movant finds error with the Magistrate Judge's attempt to "stretch" the Jones timeline holding to his lawyers Gillooly and Mooney.

the time the Defendant and his co-conspirators were entering
guilty pleas.  The Defendant entered his guilty plea after the
Supreme Court rendered its decision in Jones v. United States,
526 U.S. 227 (1999), which was the precursor to the decisions in
Apprendi, Blakely and Booker.

　　After Apprendi was decided, but before the decisions in
Blakely and Booker, it was the standard practice of the court,
where there was no drug quantity pled in an indictment, to
sentence a defendant under Section 841(b)(1)(C), which provided
no mandatory minimum sentence and had a maximum sentence of 20
years.  In United States v. Promise, the Fourth Circuit held
that an "individual who possesses with intent to distribute an
identifiable but unspecified quantity of [controlled
substances]" faces a maximum sentence of twenty years under that
section, and that a "sentence exceeding twenty years may be
imposed only upon an additional finding that the offense
involved a specific threshold quantity of a schedule I or II
controlled substance."  266 F.3d 150, 156 (4th Cir. 2001)(en
banc).

　　In United States v. Cotton, 261 F.3d 397, 404 (4th Cir.
2001), the court determined that an indictment was "mandatory
and jurisdictional" and that an indictment that contained no
specified drug quantity only granted the district court
jurisdiction to try and sentence the defendant under the

18

baseline drug trafficking offense in section 841(b)(1)(C).    In
2002, the Fourth Circuit issued its opinion in United States v.
Martinez, 277 F.3d 517 (4th Cir. 2002) in which the court held,
inter alia, that based upon the decisions in Apprendi, Promise
and Cotton, the district court erred in advising a defendant at
his guilty plea hearing that he faced a mandatory minimum
sentence of ten years and a maximum sentence of life in prison,
where the defendant's indictment did not specify a drug
quantity.   The Martinez court further held that the district
court possessed jurisdiction only over Martinez for a conspiracy
to violate section 841(b)(1)(C), and that the court could only
conduct plea and sentencing proceedings for that offense.   Id.
at 529.

    Mr. Spencer admitted during his plea colloquy that the
conspiracy involved five kilograms or more of cocaine powder or
50 grams or more of cocaine base.   Because he admitted to the
essential element of the charge during his plea, the minimum ten
year and maximum life sentence was triggered.   Defendant also
repeatedly agreed that he understood that he was exposed to the
minimum and maximum penalty under this section.   Based upon the
settled law at the time, Spencer was properly advised of the
minimum and maximum sentences to which he was exposed,
notwithstanding the fact that the superseding indictment
contained no drug quantity, and Defendant has not shown that

counsel's conduct fell below an objective standard of reasonableness under the circumstances.  The court has recognized this fact in denying a similar claim raised by a co-defendant, Calvin Dyess.  Dyess v. United States, Case No. 2:08-cv-00849.

Nor was Mr. Gillooly's performance deficient on this issue. Defendant asserts that had Mr. Gillooly challenged the Defendant's guilty plea on this issue, he may have been able to withdraw his guilty plea.  There is ample evidence that counsel Gillooly investigated the case law and gave the Defendant the benefit of his professional advice.  (Doc. No. 1145 at 35-36). The court is convinced that there was no Sixth Amendment violation, and Defendant was properly advised of the minimum and maximum sentences to which he was exposed, based upon his voluntary admissions during his plea colloquy that the conspiracy involved a quantity of more than 5 kg of cocaine and 50 grams or more of cocaine base.[5]  A motion by Mr. Gillooly would have been frivolous, which Mr. Gillooly likely realized. Fourth Circuit precedent supports that conclusion by Mr. Gillooly.  In United States v. Cotton, the Fourth Circuit held

---

[5] The Movant takes issue with this fact in his Objections.  He notes that Mr. Henderson told him to "simply say yes to everything so as not to make Judge Haden or the Government upset," insinuating that he would not have admitted to these quantities of drugs had he been correctly informed that he was facing a maximum of only 20 years with no mandatory minimum.

that an indictment that omits a drug quantity is sufficient to
sustain a conviction and the failure of the Court to inform the
Defendant of a drug quantity at the plea hearing is no reason to
allow withdrawal of the plea.  293 F.2d at 687 n.16.  Based on
the foregoing, the Movant has failed to show that counsel
Gillooly's performance fell below a standard of objective
reasonableness.

Finally, the Movant criticizes counsel Mooney's performance
on appeal:  "Movant wishes to preserve for appeal the fact that
counsel Mooney was in the best position to make the challenge to
the guilty plea on Movant's direct appeal. . . Moreover, the
Magistrate has totally discounted the attached disciplinary
hearing of counsel Mooney effectively suspending her from
practicing law."[6]  The fact that Ms. Mooney was reprimanded in a
separate case "around the same time" that she was representing
Mr. Spencer does not adequately show that Ms. Mooney's
performance in Mr. Spencer's case fell below the standard of
objective reasonableness, and the Magistrate Judge did not err
in failing to consider it.  For these reasons, the court FINDS
that the defendant did not receive ineffective assistance of

---

[6] Spencer attached to his objections a record of a disciplinary
action against Ms. Mooney, which was filed in 2009.  (Doc. No.
1222 at p. 21).  The attachment shows Ms. Mooney being
disciplined by the West Virginia Supreme Court for a lack of
communication and diligence in an unrelated case, as well as her
contempt of court order.

counsel from Mr. Henderson, Mr. Gillooly, or Ms. Mooney.  As
such, he is not entitled to relief on this ground.

**Objection III.  "Counsel Henderson was ineffective at
sentencing for failing to object to the drug quantity
attributable to Movant Spencer at sentencing."**

In his third objection, the Movant objects to the fact
"that the Magistrate judge would adopt the government's stance
verbatim" and asserts that Magistrate Judge Stanley's finding
"do[es] not contain a scintilla of authority."  The Movant
specifically finds fault with the assertion that Mr. Henderson
made a strategic decision not to object to the relevant conduct
determination, thus securing a 3-level reduction in defendant's
guideline for acceptance of responsibility.  The government
relied on the fact that Defendant admitted to being involved
with 12-17 kilograms of powder cocaine, which the Movant now
denies.

The issue is whether Mr. Henderson's conduct during the
sentencing phase fell below an objective standard of
reasonableness.  The court finds that it did not.  Mr. Henderson
may have made a strategic decision not to challenge the quantity
in order to secure the acceptance of responsibility three-level
reduction.  It is also possible that because he did not know the
exact quantities, and based on the fact that Mr. Spencer had
admitted to dealing a certain amount of drugs (at least 5 kg of
cocaine and 50 grams of cocaine base), he made a strategic

22

decision not to call attention to the admitted quantity of drugs by objecting to the lower quantity considered at sentencing. The Movant had the burden to show that Mr. Henderson's conduct fell below an objective standard of reasonableness, and he has not met that burden. The Movant's assertion that he would have only had a base level of 12 rather than 38 runs contrary to his own admitted quantity of drugs. For these reasons, the court denies the defendant's objections and finds that Mr. Spencer is not entitled to relief on this ground.

> **Objection IV. "Mr. Gillooly was ineffective for failing to investigate and interview witnesses prior to the 2004 evidentiary hearing and calling those witnesses at the hearing to dispute the drug quantity."**

The Movant's Fourth objection alleges that Thomas Gillooly, who represented Defendant during the remand proceedings, failed to investigate and interview witnesses prior to the 2004 evidentiary hearing. Mr. Gillooly's Affidavit shows that he attempted to interview and investigate prior to the evidentiary hearing: "defense counsel and I made strenuous and repeated efforts to obtain interviews of the witnesses we thought should be considered for the evidentiary hearing. Most were reluctant to talk to us or refused outright." (Doc. No. 1145). The Movant takes issue with well-settled law that the failure to call witnesses is a tactical decision which generally does not amount to ineffective assistance of counsel. Goodson v. United

States, 564 F.2d 1071, 1072 (4th Cir. 1977).  Mr. Gillooly's affidavit shows that he did investigate and attempt to secure alternate witnesses, which were unwilling to testify.  The refusal to subpoena witnesses when he did not know what the witnesses would say at the hearing certainly falls within a tactical decision by counsel.

Movant has failed to show that Mr. Gillooly's performance in failing to call witnesses at the evidentiary hearing falls below an objective standard of reasonableness.  As such, the court finds that he is not entitled to relief on this ground.

**Objection V.  "The District Court erred in not resentencing Movant Spencer in light of Apprendi and Booker."**

In this objection, the Movant concedes that his Apprendi error is moot based on his resentencing under 18 U.S.C. § 3582(c)(2) to 168 months.  However, he asserts that his Booker argument warrants further consideration.  He objects to the fact that he was never given an opportunity to present evidence based on the § 3553(a) factors when this court stated during the limited evidentiary hearing that it would have imposed the same sentence as Judge Haden's original sentence.  Mr. Spencer relies heavily upon the dissent during his direct appeal.

It is clear from the record that the Fourth Circuit considered this exact argument during Mr. Spencer's direct

appeal and ultimately upheld this court's ruling.  The majority

opinion states:

> Any further proceeding designed to correct the <u>Booker</u>
> error in the sentences would be little more than an
> empty formality, for the sentence the district court
> would impose on remand is a foregone conclusion.  At
> the conclusion of the most recent evidentiary hearing
> in this case, the district court (Judge Faber)
> possessed as much or more reliable information about
> the defendants and the details of their offenses as
> had the sentencing court (Judge Haden).  The district
> court was thus entitled to conclude that the sentences
> were reasonable and justified by abundant proof.  We
> therefore decide that the defendants are not entitled
> to resentencing under <u>Booker</u> despite the Sixth
> Amendment error, or otherwise, as the defendants'
> sentences were not "longer than that to which they
> would otherwise be subject." <u>Hughes</u>, 401 F.3d at 548.

478 F.3d at 242 (internal citations omitted).  Because the

defendant has already raised this issue before the appellate

courts, and because the Fourth Circuit has already held that any

error on this issue was harmless, the court FINDS that defendant

is not entitled to relief on this objection concerning the

alleged error in failing to resentence Mr. Spencer.

Additionally, the court has considered whether to grant a

certificate of appealability in this case.  <u>See</u> 28 U.S.C. §

2253(c). To grant a certificate of appealability, there must be

a substantial showing of the denial of a constitutional right by

demonstrating that the issues raised are debatable among

jurists, that a court could resolve the issues differently, or

that the questions deserve further proceedings.  28 U.S.C. §

2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims is debatable or wrong and that any dispositive procedural ruling is likewise debatable.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Rose v. Lee</u>, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court **DENIES** a certificate of appealability.

<u>CONCLUSION</u>

For the reasons stated above, the court **ADOPTS** the PF&R, **OVERRULES** Movant's objections to the PF&R and **DENIES** Mr. Spencer's motion under 28 U.S.C. § 2255.  This matter is removed from the court's active docket.

The court further **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the defendant <u>pro se</u>, and counsel of record.

**IT IS SO ORDERED** on this 29th day of March, 2012.

Enter:

David A. Faber
Senior United States District Judge